33836. ATLANTA LIFE INSURANCE COMPANY *v.* MANN.

DECIDED JANUARY 23, 1952.

*F. Kelly McCutchen, Stafford R. Brooke,* for plaintiff in error. *Hardin & McCamy,* contra.

FELTON, J. ■ It is sufficient to say, without going into the details of the evidence, that the evidence authorized the jury to find that the attempted change of beneficiary was ineffectual, and that, at the time of the death of the insured, the plaintiff was beneficiary.

■ The defendant contends that it had the right to pay the proceeds of the policy to Georgia Baker under the following clause of the policy: "2. Facility of Payment. The Company will pay such amount either to the beneficiary named herein, or to the executors, administrators or assigns of the insured, or to any other person appearing to said Company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, or for his or her burial; and the production of a receipt signed by either of said persons shall be conclusive evidence that all claims under this policy have been satisfied." The main purpose of "facility of payment" clauses in policies of this kind is to provide a fund from which the insured may procure care in his last sickness, and a respectable burial. *Brewer* v. *Wilson,* 58 *Ga. App.* 429, 431 (198 S. E. 835) ; *Cooler* v. *Metropolitan Life Ins. Co.,* 60 *Ga. App.* 222, 225 (3 S. E. 2d, 462). The defendant here seeks to refute the plaintiff's claim to the proceeds of the policy as beneficiary named therein by showing that it paid the proceeds to one equitably entitled thereto under the "facility of payment" clause; therefore, the defendant had the burden of proving that it properly made such payment under this clause of the policy. In order to successfully do this, the defendant must have shown that the proceeds were

paid to one who had actually incurred expenses in caring for the deceased in his last illness or in burying him; or that the person so paid had contracted to pay for such expenses; or that the person so paid actually used the money in paying them. Georgia Baker, the person to whom the proceeds of the policy were paid, testified: "During my father's sickness, and up until the time of his death, as to whether or not I paid out any money on account of his sickness for doctor bills or hospital or medicine or anything—well, I had several prescriptions filled, and one time when the doctor was there I paid him. The burial expense was paid out of the savings that he had. Well, I don't know whether he had savings or not, but he told me he had money in the bank. No, he didn't have sufficient money in the bank to pay his funeral expenses; not all of it. No, I don't know who paid for them. He had one little sick and accident policy, it was $45. Yes, it was all used to pay the funeral expenses, with what he had in the bank and to take care of his indebtedness. He owed the light bill, and I paid that. . . As to who stayed there and looked after my father during his last illness; well, we were there, but Uncle Sol was there, and his wife most all the time. . . Well, I don't know exactly how many prescriptions I paid for myself, but I can say I paid for several. You see, in four years—. As to whether I paid for several in the four years, and that's all I contributed toward my father—well, at times I was there and I paid for some prescriptions. Yes, the other children were there too. They were there as much as I was, and Ruby was there more than I was, I guess. As to whether I know if the other children occasionally got prescriptions filled for him— well, yes, I'm sure they did. . . Yes, I collected the money on this policy that my Uncle Sol had been carrying on my father. No, sir, my father's funeral bill wasn't all paid out of his own funds, most of it was. No, not all of his other bills was paid out of his own funds. As to what other bills were there— well, there was a garage bill, I don't know how much it was. My sister and I paid it—my sister Ruby. That was the P. & W. Garage. There was a grocery bill at Burton's—we paid that, my sister and I. Well, I don't know how much the grocery bill was, I didn't know this was coming up and I just don't remember. I think it was $4 or $5. As to whether I had my sister Ruby

pay part of that—well, it was paid with the insurance money. As to whether I got it all back when I collected the insurance policy money; well,— yes, he had other insurance. As to whether I paid any other bills besides the garage and grocery bills out of the insurance money; well, I just can't tell—I don't know of any, I can't think of any." The plaintiff testified: "Yes, I know who paid the funeral expenses; they were paid out of what money he had in the bank and a little insurance policy that he had." This was undisputed. It is clear from this testimony that Georgia Mae Baker did not incur expenses for the last illness or burial of the insured, nor contract to pay for them, nor actually use the proceeds for such purposes. The evidence demanded a finding that the defendant did not pay the proceeds of the policy to one equitably entitled thereto under the "facility of payment" clause, as against the claim of the beneficiary named in the policy.

■ Special ground one of the amended motion complains that the court improperly excluded testimony of the defendant's agent as to what Georgia Mae Baker told the agent she was going to do with the proceeds of the policy. The agent testified: "As to whether anything was said by Georgia Mae Baker when she made this proof or when we paid this money to her, and as to what she was going to do with the money  . .  ." Here the objection was made and sustained. The defendant contends that the testimony should have been admitted to show that the defendant acted in good faith in paying the proceeds to Georgia Baker, in that the statements were that she was going to use the proceeds to pay the expenses of the last illness and burial of the insured. We think that the testimony was properly excluded. In order to show good faith in making the payment to Georgia Baker by these statements, it was necessary to show that they induced the defendant to make the payment. The agent testified that the statements sought to be testified to were made "when she made his proof or when we paid the money to her." This alternative testimony failed to show that the statements were made at a time when they could have been considered by the company in determining that it would pay Georgia Baker and when they could have been the inducement for making the payment. Therefore, the testimony excluded was irrele-

vant and immaterial to show that the defendant was induced by these statements to make payment to Georgia Mae Baker under the "facility of payment" clause of the policy.

The court did not err in overruling the amended motion for a new trial.

*Judgment affirmed. Sutton, C.J., and Worrill, J., concur.*